UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RACHEL TURNER and SHAWN HUNT,

    Plaintiffs,

    v.

GRAND BLANC COMM. SCHOOL DIS.,

    Defendant.
_____/

Case No. 14-cv-14034

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
MONA K. MAJZOUB

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [19]
IN PART AND DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT [21]**

**I. INTRODUCTION**

Rachel Turner and Shawn Hunt ("Plaintiffs") commenced this action on October 14, 2014 against Grand Blanc Community School District ("the District" or "Defendant") in Michigan State Court. *See* Dkt. No. 1-2. On October 20, 2014, the action was removed to federal court. *See* Dkt. No. 1. In the Complaint, Plaintiffs contend that the District (1) violated the Michigan Open Meetings Act ("OMA"), (2) violated Article 1 §§ 3, 5 and 17 of the Michigan Constitution, (3) violated the First and Fourteenth Amendments of the United States Constitution, (4) is liable under 42 U.S.C. § 1983, and (5) is liable for breach of contract.[1] *See* Dkt. No. 1 (Exhibit 2).

On August 20, 2015, the District moved for Summary Judgment on all Counts. *See* Dkt. No. 19. On the same day, Plaintiffs moved for Partial Summary Judgment on Count I. *See* Dkt. No. 21. While both parties filed responses to the Motions, neither party submitted Reply briefs.

---

[1] In the Amended Complaint [1], Plaintiffs allege two claims for breach of Contract. However, upon review of the Complaint, the Court finds they are the same. *See* Dkt. No. 1. Nevertheless, the Court will treat them as Counts V and VI.

-1-

A hearing was held on October 13, 2015. For the reasons discussed herein, the Court **DENIES** Plaintiffs' Motion for Partial Summary Judgment, and **GRANTS** Defendant's Motion **IN PART**.

## II. BACKGROUND

Plaintiff Rachel Turner was an administrator in the Grand Blanc Community School District. She was hired on as a principal at Brendel Elementary School ("Brendel") in 2008. Dkt. No. 19 at 13 (Pg. ID No. 113). Her contract was renewed on several occasions between 2008 and 2011. *Id.* Plaintiff Turner's final contract was executed on July 1, 2011 and effective until June 30, 2013. *See* Dkt. No. 19 (Exhibit 6). Under the terms of the final contract, Plaintiff Turner could be dismissed or demoted for "reasonable cause." *Id.* Furthermore, the Board of Education could also decide to not renew the contract, as long as the non-renewal was neither arbitrary nor capricious. *Id.* In the event of either a dismissal or non-renewal, she would be afforded at least 90 days written notice prior to the renewal date (April 12), and would be provided the reasons for her dismissal. *Id.*

On January 31, 2013, the Deputy Superintendent for Grand Blanc Community Schools, Clarence Garner, sent a letter to Rachel Turner notifying her that her contract would not be renewed. *See* Dkt. No. 19 (Exhibit 11). The reasons behind the decision were listed in the letter: (1) lack of professional attention regarding communication to foster a positive atmosphere for staff and students; (2) lack of a systemic plan to address concerns regarding student safety and discipline matters; (3) concerns from parents regarding fair treatment and attention to student issues; (4) lack of professional attention in written communication to staff, parents, and colleagues. *Id.* The letter also notified Plaintiff Turner that she would have the "opportunity to meet with a majority of the Board of Education either in an open or closed session at the March

18, 2013 Board meeting to discuss the reason for the proposed nonrenewal of her contract." *Id.* At the March 18 meeting, the Board of Education ("the Board") scheduled a special meeting to take a final vote at a public hearing on April 22, 2013. Dkt. No. 19 (Exhibit 13 at p. 2).

At the opening of the April 22 hearing, Lori Steinhauer, the hearing officer, gave the following instructions:

> Once all the testimony has been given, then each side again may make a brief closing statement or some closing statements you may want to make to the Board of Education. Following the closing statements, we will go into public comments. Following the public comments, we will go into future business. After future business, then we will go into an executive session, at which time the Board of Education, the superintendent and myself will go into another room, where the Board will review the evidence and deliberate over what they have heard this evening.

Dkt. No. 19 (Exhibit 15). During the hearing, the Board called several witnesses, Ms. Turner cross examined, and both sides gave closing statements. *Id.* Ms. Turner declined to call any witnesses. *Id.*

At the end of the evidentiary hearing, Ms. Steinhauer invited public comment. *Id.* Several individuals who had signed in and indicated that they wished to address the Board were not permitted to speak, including Plaintiff Shawn Hunt. *Id.* Following the public comment, the Board adjourned to their closed portion of the meeting. *Id.* Upon their return, the Board elected to not renew Plaintiff Turner's contract.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) "directs that summary judgment shall be granted if 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998). The court must view the facts, and draw reasonable inferences from those facts, in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 255 (1986). No genuine dispute of material fact exists where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## IV. DISCUSSION

### A. Counts II, III, and IV

#### a. Michigan Constitutional Claims

The Defendant has moved for the dismissal of the claims brought under the Michigan Constitution. Defendant argues that "[i]n order for a plaintiff to have an independent cause of action for a violation of individual rights guaranteed by the Michigan Constitution, there must be no other means by which to vindicate the rights which were allegedly violated." Dkt. No. 19 at 30 (Pg. ID No. 129). Under Michigan Law, the question is "whether compensatory relief is 'necessary' or 'appropriate' to the vindication of the interest asserted." *Cremonte v. Michigan State Police*, 232 Mich. App. 240, 251 (1998) (quoting *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 407 (1999) (Harlan, J., concurring)).

Here, Plaintiffs' claims arise from Article I, sections 3, 5 and 17, which relate to free assembly, free speech and due process respectively. *See* Mich. Const. art. 1, §§ 3, 5 and 17. These sections do not provide any language that enables the Court to enforce them in the event of a violation. *Id.* However, as stated above, the Court may still infer damages if "necessary." *Cremonte*, 232 Mich. App. at 251. The Plaintiffs have brought similar causes of action under the First and Fourteenth Amendments of the U.S. Constitution, pursuant to 42 U.S.C. § 1983. *See*

Dkt. No. 1 (Exhibit 2). Having brought a claim under § 1983, Plaintiffs' state constitution claims are not necessary. Therefore, Defendant's Michigan Constitutional claims will be dismissed.

### b. 42 U.S.C. § 1983 Claims

The Defendant has also moved for the dismissal of Plaintiffs' claims as to violations of the First and Fourteenth Amendment of the United States Constitution. Dkt. No. 19. Specifically, Plaintiffs allege that the Board's 'sign-in policy' and refusal to allow Plaintiff Hunt to speak violated the First Amendment as incorporated by the Fourteenth Amendment, and that the evidentiary hearing itself violated Plaintiff Turner's right to Due Process. Dkt. No. 1 (Pg. ID No. 13–14).

As stated above, the Plaintiffs have brought these claims under 42 U.S.C. § 1983. In order to successfully bring a § 1983 action under *Bivens*, a plaintiff must prove "(1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of law." *Webb v. U.S.*, 789 F.3d 647, 659 (6th Cir. 2015). That the Board was acting under the color of law is not in dispute. The sole question is whether the Board deprived Plaintiffs of their Constitutional rights.

#### i. The First Amendment Claim

The First Amendment to the United States Constitution provides "Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble . . ." U.S. Const. Amend. I. "Courts apply a 'forum analysis' to determine whether a limitation on speech is permissible under the First Amendment." *Timmon v. Wood*, 316 F. App'x 364, 365 (6th Cir. 2007) (citing *Tucker v. City of Fairfield*, 398 F.3d 457, 463 (6th Cir. 2005)). Both parties agree that the Board's hearing is a "limited forum." *See Lowery v. Jefferson County Bd. Of Educ.*, 586 F.3d 427 (6th Cir. 2009). Therefore, the Board may apply restrictions to the

"time, place, and manner of speech so long as those restrictions are '(1) content-neutral, (2) narrowly tailored to serve a significant government interest and (3) leave open ample alternative channels for communication of the information.' " *Id.* at 432 (quoting *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984). "In this context, 'the requirement of narrow tailoring is satisfied so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation,' and does not 'burden substantially more speech than is necessary to further the government's legitimate interests.' " *Tucker*, 398 F.3d at 463 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989)).

The Plaintiffs argue that the Board's sign-in policy and decision to enter a closed meeting violated the citizens' "right to discuss any issue" that may have been of "public concern." Dkt. No. 25 (Pg. ID No. 814). Plaintiffs further contend that "Defendant was in error when it limited speech related to [the non-renewal of the contract], based on content." *Id.* (Pg. ID No. 816).

The Court finds the sign-in policy to merely be a process by which the Board can identify citizens who wish to speak. Citizens are neither required to provide the subject matter of their comments, nor their particular viewpoint on that subject matter before commenting. They are only required to keep their comments brief, and to mark the form. Whether the citizens are provided the opportunity to speak is "justified without reference to the content." *Clark v. Cmty. For Creative Non-Violence*, 468 U.S. 288, 293 (1984). Therefore, the sign-in policy is a content-neutral restriction on the manner of speech, and is permissible.

Plaintiffs reliance on *Gault v. City of Battle Creek*, 73 F. Supp. 2d 811 (W.D. Mich. 1999) is misplaced. Not only is *Gault* non-binding on this Court, it is distinguishable. The Court in *Gault* wrote:

> Therefore, the First Amendment rights of citizens would be unduly restricted based on content if a public body was allowed *to rule out of order* any speech

concerning a subject that was being considered or that might be considered in a closed meeting. Therefore, the Court concludes that Plaintiffs' rights under the First Amendment and the OMA were improperly restricted when they were *ruled out of order for attempting to speak on an issue* that was the subject of a closed meeting.

*Gault*, 73 F. Supp. at 818 (emphasis added). If Plaintiffs had been ruled *out of order* based on something they had said, as in *Gault*, Plaintiffs' rights would have been violated because such a rule would be content-based. However, there are no facts present that suggest Plaintiffs (or anybody else) was ruled out of order.

Similarly, Plaintiffs have not provided any evidence that the Defendant closed the hearing based on something said at the hearing. The evidence before the Court only suggests that the public comments session was ended due to timing reasons. *See* Dkt. No. 19 (Exhibit 15 at p. 112) ("If you'll remember that we actually started the meeting late, because we sent her around to ensure that we had the name of every person who had signed up."). The Board is not required to allow every citizen with an opinion to make a comment. Not only would it potentially take all night, but it would effectively remove the Board's ability to control the manner of the hearing. Therefore, seeing no violation of the First Amendment, Defendant's Motion as to this Count will be granted, and this claim will be dismissed.

    ii.   The Fourteenth Amendment Due Process Claim

"In the context of employment rights, the Supreme Court has explained that the root requirement of the Due Process clause is that an individual be given the opportunity for a hearing before he is deprived of any significant property interest." *Mitchell v. Fankhauser*, 375 F.3d 477, 480 (6th Cir. 2004) (quotations omitted). The former employer must give (1) oral or written notice, (2) an explanation of the employer's evidence, and (3) an opportunity for the employee to present his/her side of the story. *Id.* Whether or not a hearing is constitutionally sufficient depends on its "meaningfulness." *Id.*

Here, Plaintiff Turner was given written notice of the District's decision not to renew her contract. Dkt. No. 19 (Exhibit 11). The written notice contained an explanation of the District's reasons behind the decision. *Id.* Plaintiff was also given a chance to present a case. *See* Dkt. No. 19 (Exhibit 15). These facts are not in dispute. However, Plaintiffs argue, albeit nebulously, that the decision was based on an "incomplete record." Dkt. No. 25 (Pg. ID No. 816).

At the beginning of the hearing, Plaintiff Turner was notified that the district would call witnesses and Turner would be given the opportunity to cross examine. Dkt. No. 19 (Exhibit 15, pp. 7–8). Plaintiff Turner would then be given the opportunity to call witnesses. *Id.* Then both sides would be given the opportunity to give closing statements. *Id.*

The District called five witnesses, and Plaintiff Turner cross examined each one. *Id.* at pp. 12–65. Plaintiff Turner declined to call any witnesses. *Id.* Both sides then gave their closing statements. *Id.* at 76–96. Plaintiffs have presented no evidence that the process was unfair, biased or "incomplete." Accordingly, the Court will dismiss the Due Process claim as well.

### B. Counts I, V and VI

"Where, as here, federal claims are dismissed or non-suited subsequent to a proper removal, this Court has the discretion to retain jurisdiction over the supplemental state law claims, because jurisdiction 'depends upon the state of things at the time of the action brought.' " *B & B Enterprises of Wilson County, LLC v. City of Lebanon*, 422 F. Supp. 2d 903, 906 (M.D. Tenn. 2006) (quoting *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570 (2004). Furthermore, the Court also retains discretion to "remand to state court a removed case involving pendent claims upon a proper determination that retaining jurisdiction over the case would be inappropriate." *Carnegie Mellon University v. Cohill*, 484 U.S. 343, 357 (1988).

This action was originally filed in state court. Furthermore, although Counts V and VI appear relatively weak, the record indicates there may be issues of fact with regard to Count I. Moreover, resolution of Count I also requires the interpretation of language found in the Open Meetings Act, MICH COMP. LAWS § 15.263(5). Accordingly, the Court will dismiss the remaining state law claims without prejudice and remand them back to state court.

### V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendant's Motion **IN PART**. Counts II, III, and IV will be **DISMISSED WITH PREJUDICE**. Plaintiffs' Motion for Partial Summary Judgment is **DENIED**. Counts I, V, and VI will be **DISMISSED WITHOUT PREJUDICE** and remanded to state court.

IT IS SO ORDERED.


Dated: October 19, 2015                         s/Gershwin A. Drain
       Detroit, Michigan                        GERSHWIN A. DRAIN
                                                United States District Judge